5

98028830

STATE OF INDIANA
LAKE COUNTY
FILED FOR RECORD

98 APR 22 PM 1:53

_____
_____ Space Above This Line for Recording Data _____

# MORTGAGE

THIS MORTGAGE (hereinafter referred to as "Security Instrument") is given on this 22ND day of APRIL, 1998. The Mortgagor is SHEILA GREGORY A/K/A SHEILA STUBBS

_____(herein "Borrower"). This Security Instrument is given to Advanta Finance Corp., a corporation organized and existing under the laws of Nevada, whose address is 334 WEST U.S. 30 SUITE E VALPARAISO, IN 46383 (herein "Lender").

BORROWER, does hereby mortgage, grant and convey to Lender the following described property ("Property") located in the County of LAKE, State of Indiana:

LOAN# 1379036

SEE "SCHEDULE A"

Together with the buildings and improvements thereon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging or in anywise appertaining, in order to secure repayment of the indebtedness evidenced by Borrower's:

☐ If checked, Revolving Loan Agreement of even date herewith, which obligates Lender, subject to the conditions stated therein, to advance to Borrower up to a Credit Limit of $_____ with finance and other charges due and payable on _____.

☒ If checked, Note of even date herewith, in the principal sum of $ 78105.26 payable in monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid due and payable on 05/01/2018.

This Security Instrument also secures any extensions, future advances, renewals, modifications, or refinancing thereof, and the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Security Instrument and the performance of the covenants and agreements herein contained.

☐ If checked, the Revolving Loan Agreement or Note contains provisions for a variable rate. The payment amount and term of the indebtedness may vary, as may the amount of interest secured by this Security Instrument.

As additional security for payment of the aforesaid indebtedness, Borrower hereby presently and absolutely assigns to Lender all rents, profits, rights and benefits accruing under all leases now or hereafter placed on said Property, and the lessee, assignee or sublessee is hereby directed on production of this Security Instrument, or certified copy thereof, to pay said rents, profits, rights and benefits to Lender. In the event of default in the covenants and conditions of this Security Instrument, or other obligation secured hereby, Lender shall have the right peaceably to enter upon and take possession of said Property and assume control of the transactions having to do with rents and profits, to collect the same and to apply them to payment of the aforesaid indebtedness.

Provided that if the said Borrower, executors, administrators, or assigns, shall well and truly pay, or cause to be paid, the aforesaid indebtedness stated above and all the installments of interest thereon, when and as each of them shall respectively be due and payable as aforesaid, and shall perform each and all of the covenants herein on their part to be performed, then this Security Instrument shall be released.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby mortgaged and has the right to mortgage the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender further covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Revolving Loan Agreement or Note and any prepayment, late and other charges due thereunder.
2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender shall be applied: first to any late or other charges due under the Revolving Loan Agreement or Note; second, to interest due; and last to principal due.

Initials: _____

61013-IN (Rev. 12-96)        SEE OTHER PAGES FOR ADDITIONAL TERMS        PAGE 1 OF 4

EXHIBIT " A "

Guaranteed Fidelity Title Co.
401 15th St South East ste 3 Demotte In 46310

1700
SW

1704

## ADDITIONAL TERMS

**3. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Upon Borrower making these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**4. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term of "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. The insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6. All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments or change the amount of the payments due Lender. If the Property is acquired by Lender hereunder, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**5. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided herein, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any information) in connection with the loan evidenced by the Revolving Loan Agreement or Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**6. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Revolving Loan Agreement or Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**7. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due. If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments due Lender.

**9. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 15. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Revolving Loan Agreement or Note: (a) is co-signing this Security Instrument only to mortgage that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Revolving Loan Agreement or Note without that Borrower's consent.

Initials: _____

61013-IN (Rev 12-96)            SEE OTHER PAGES FOR ADDITIONAL TERMS            PAGE 2 OF 4

## ADDITIONAL TERMS

**11. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Revolving Loan Agreement or Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Revolving Loan Agreement or Note.

**12. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**13. Governing Law; Severability.** This Security Instrument shall be governed by the law of the state of Indiana and federal law where applicable. In the event that any provision or clause of this Security Instrument or the Revolving Loan Agreement or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Revolving Loan Agreement or Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Revolving Loan Agreement or Note are declared to be severable.

**14. Borrower's Copy.** Borrower shall be given one conformed copy of the Revolving Loan Agreement or Note and of this Security Instrument.

**15. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by applicable law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**16. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Revolving Loan Agreement or Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 15.

**17. Sale of Revolving Loan Agreement or Note; Change of Loan Servicer.** The Revolving Loan Agreement or Note or a partial interest in the Revolving Loan Agreement or Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Revolving Loan Agreement or Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Revolving Loan Agreement or Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**18. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means state and federal laws and laws that relate to health, safety or environmental protection.

**19. Acceleration; Remedies.** Lender shall give notice to Borrower as required by applicable law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 15 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose the Security Instrument by judicial proceeding. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this paragraph, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**20. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**21. Waiver of Appraisement and Valuation.** All rights of Valuation and Appraisement of the Property are waived.

Initials: _____

## ADDITIONAL TERMS

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

WITNESS:

_____           _____
MARK J. MULLINS                              SHEILA GREGORY A/K/A SHEILA STUBBS

STATE OF INDIANA     LAKE     County

The foregoing instrument was acknowledged before me this _____

WITNESS my hand and seal on this date.

My Commission expires: 12/16/2000

DOCUMENT PREPARED BY:  PAT MADISON

Resident of Lake Co.

61013-IN (Rev. 12-96)          SEE OTHER PAGES FOR ADDITIONAL TERMS          PAGE 4 OF 4

## SCHEDULE A

Name of Borrower(s) SHEILA GREGORY A/K/A SHEILA STUBBS

Order Number 10089598 & 10089616

### Legal Description of Real Property:

TRACT I (4969 ADAMS ST, GARY, IN 46408)

THE SOUTH 4 FEET OF LOT 13 AND THE NORTH 38 FEET OF LOT 14, BLOCK 19, JUNEDALE SUBDIVISION IN THE CITY OF GARY, PLAT BOOK 19, PAGE 3 IN LAKE COUNTY, INDIANA.

PERMANENT INDEX NUMBER (25) 45-0183-0018

TRACT II: (3615 CONNECTICUT STREET, GARY, IN 46409)

LOTS 45, 46, 47 AND 48 IN BLOCK 6 IN SOUTH BROADWAY ADDITION TO GARY, AS PER PLAT THEREOF, RECORDED IN PLAT BOOK 7, PAGE 8, IN THE OFFICE OF THE RECORDER OF LAKE COUNTY, INDIANA, COMMONLY KNOWN AS 3615 CONNECTICUT STREET, GARY, INDIANA, 46409

PERMANENT INDEX NUMBER:  (25)47-0070-0047
PERMANENT INDEX NUMBER:  (25)47-0070-0049
PERMANENT INDEX NUMBER:  (25)47-0070-0050

Real Property
Commonly Known As:
TRACT I       4969 ADAMS STREET, GARY, IN 46408
TRACT II      3615 CONNECTICUT STREET, GARY, IN 46409

61000 (Rev. 01-97)

114-037-001; 114-037-001-000F

LENDER:

ADVANTA FINANCE CORP.
LICENSE 1381
[illegible] WEST US 30, STE K
VALPARAISO, IN 044383

| ACCOUNT NUMBER | [illegible] | DATE INTEREST BEGINS TO ACCRUE |
|---|---|---|
| [illegible] | | 04/27/98 |

[illegible] (BORROWER NAME AND ADDRESS)

[illegible], [illegible] C.
[illegible] ADAMS ST
GARY IN [illegible]

| DATE OF LOAN | FIRST DUE DATE | [illegible] | FINAL DUE DATE | FIRST PAYMENT | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|
| 04/27/98 | 06/01/98 | | 05/01/18 | 834.58 | 725.40 | [illegible] | [illegible] |

1. Amount given to me directly and/or paid to my behalf $ 12831.00
2. Amount paid on my account $ NONE
3. Additional amount paid on my behalf $ 15.00 Real Estate Recording/Releasing Fee Paid to Public Official

NONE UCC Fee Paid to Public Official $ NONE Single Credit Life Insurance Paid to Insurance Company

NONE [illegible] Fee Paid to Public Official $ NONE Joint Credit Life Insurance Paid to Insurance Company

$ 360.00 Appraisal Fee Paid to Appraiser $ NONE Credit Disability Insurance Paid to Insurance Company

$ 175.00 [illegible] Fee of Lender $ NONE Involuntary Unemployment Insurance Paid to Insurance Company

$ 467.00 Title Search/Insurance Premium Paid to Title Company

4. Amount Financed (1 + 2 + 3) $ 74141.00

5. Prepaid Finance Charge: $ NONE Service Provider Fee

$ 3003.36 Loan Origination Fee $ 30.00 Loan Points

Total Prepaid Finance Charge $ 3034.74

6. [illegible] $ 84113.44

Interest Rate (Agreed Rate of Charge) 9.45 %

7. FINANCE CHARGE (6 + 5) $ 100277.70

8. Principal Amount of my Loan (4 + 5) $ 78105.74

9. ANNUAL PERCENTAGE RATE 10.30 %

10. Total of Payments (4 + 7) $ 174318.10

CREDIT INSURANCE AUTHORIZATION: CREDIT INSURANCE IS NOT REQUIRED FOR THIS LOAN. I may obtain credit insurance from anyone I choose. It will not be provided by the lender unless I/we initial the box(es) below. I/We understand that you may profit from the sale of this insurance. The insurance is described in the insurance documents delivered herewith. The term of the insurance offered may not be the same as the term of the loan. I may cancel credit insurance within 15 days from the date of loan and the entire premium will be credited to my account if all parties signing this Agreement authorize in writing. The cost of credit insurance will be:

| TERM | TYPE | PREMIUM | | INITIALS |
|---|---|---|---|---|
| ____ Mos. | Single Life Ins. | $ ____ | I want credit life insurance for only myself | ____ |
| ____ Mos. | Joint Life Ins. | $ ____ | I want credit life insurance for myself and co-borrower | ____ |
| ____ Mos. | Disability Ins. | $ ____ | I want credit disability insurance | ____ |
| ____ Mos. | Involuntary Unemployment Insurance | $ ____ | I want involuntary unemployment insurance | ____ |
| | | | I DO NOT want Credit Insurance | ____ |

In this Agreement "I", "me", or "my" means the borrower and co-borrower(s), if any, and "you" or "your" means Advanta Finance Corp. I will read this carefully, ask you any questions, and if I agree to be bound by this Agreement, I will sign below. If more than one person signs, each will be responsible for repaying all sums incurred under this Agreement.

PAY-OUTS: If amounts paid to others increase because closing is delayed, (a) I will pay the added amount at closing, or (b) the amount given to me will be reduced.

PROMISE TO PAY: I promise to pay you the Principal (Amount Financed plus total Prepaid Finance Charge) with interest at the Agreed Rate of Charge per year shown above. From each payment I make you may deduct insurance or other charges authorized under this Agreement, if any, then interest due to the date of payment and the remainder of the payment will be applied to the principal balance. If the entire amount is not paid in full by the Final Due Date, the remaining unpaid balance will accrue interest at the Agreed Rate of Charge until paid in full. Interest begins on the Date of Loan or the Date Interest Begins to Accrue indicated above, if other than date of loan. You may accept late payments and/or partial payments, marked "Payment in Full" (or similar) without losing your rights under this Agreement, including the right to obtain full payment of the amount owed.

LATE CHARGE: I will pay $14.58 if a payment is more than 10 days late.

RETURNED CHECK CHARGE: If any check I give you is returned unpaid, I will pay you $20 in addition to my regular payment.

PREPAYMENT: For five (5) years after the date of my loan or for the term of loan if less than five (5) years, I may pay in advance up to 20% of the original principal balance in any twelve (12) month period without penalty. If I prepay more, I will pay a penalty of six (6) months interest on the part in excess of 20% that I prepay. After five (5) years, I may prepay in advance without penalty. In all cases, the Prepaid Finance Charge is fully earned and will not be refundable.

SECURITY: I give you a security interest in the collateral checked below, including proceeds of the collateral and any refunds of any unearned insurance premiums shown above.

[X] Real Estate secured by a Mortgage signed on the date of this loan and located at the address shown above and/or:
3813 CONNECTICUT STREET GARY, IN 46403

[ ] Motor vehicle(s) and all attachments, equipment and accessories, described below:

| MAKE | SERIAL NUMBER | BODY TYPE | MODEL | YEAR | OTHER IDENTIFICATION |
|---|---|---|---|---|---|
| | | | | | |

[ ] Other: ____

INSURANCE: [ ] Physical Damage Insurance on Motor Vehicle security; [X] Title Insurance; [X] Fire and Extended Coverage Insurance and [ ] Flood Insurance on Real Estate Security are required. I may obtain Physical Damage Insurance, Fire and Extended Coverage Insurance or Flood Insurance through anyone I choose. If I do not maintain the required insurance coverage, you may obtain it, add the cost to my unpaid balance and charge interest at the Agreed Rate of Charge.

DEFAULT: I will be in default if I (1) fail to pay any payments to you on time and if I fail to pay after being given my right to cure the default as provided by law, (2) fail to keep any agreement contained in this Consumer Note and Security Agreement or my Mortgage or any other security agreement signed in connection with this Agreement, (3) sell, transfer, or fail to maintain any security without your consent, (4) file or have filed against me any bankruptcy proceeding, or (5) make any materially false statement to obtain this loan. If I am in default, you may (1) remedy my default and charge interest at the Agreed Rate of Charge on the balance of the loan on any amounts you pay, and (2) declare all I owe immediately due. If I am in default and you refer this Agreement to an attorney not your salaried employee, I will pay your reasonable attorney fees.

You can delay enforcing your rights under this Agreement without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

CREDIT INFORMATION: I will provide you with current financial information including verification of employment, from time to time as you request. My signature on this Agreement authorizes you to request at no cost to me, a credit report from a credit reporting agency.

ASSUMPTION: I understand that my Agreement may be assumed by another (the "transferee") provided you determine that the security will not be impaired by the loan assumption, the transferee meets your normal credit standards, and that the risk of a breach of any provision in this Agreement is acceptable to you. You may charge a reasonable fee as a condition to your consent to the loan assumption. You may also require the transferee to sign an assumption agreement that will obligate transferee as if this Agreement were originally made to transferee. I will continue to be obligated under this Agreement unless you release me in writing. I agree to notify you in advance of any assumption.

I HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT, THE MORTGAGE, ANY OTHER SECURITY AGREEMENT SIGNED IN CONNECTION HEREWITH AND THE FEDERAL DISCLOSURE STATEMENT.

LENDER: ADVANTA FINANCE CORP

By: ____ ____ BORROWER ____ CO-BORROWER

I give you a security interest in personal property security checked above. I am not obligated on the loan. ____ (SIGNATURE REQUIRED FOR SECURITY PURPOSES ONLY)

[illegible] 134-IN ([illegible])
AMORTIZED FIRST'S